NIELAND, et al, Appellants, v. CITY OF YANKTON,
et al, Respondents.

(222 N. W. 600.)

(File No. 5535. Opinion filed December 31, 1928.)

*French, Orvis & French,* of Yankton, for Appellants.
*Clark & Henderson,* of Yankton, for Respondents.

CAMPBELL, J. Plaintiffs brought their action below against the defendant city of Yankton and the members of its governing body, alleging in substance, in addition to necessary formal matters, that plaintiffs owned real property abutting upon Eighth street in said city, and that the governing body had adopted a resolution for paving said street in unlawful disregard of protests, and were about to let a contract and pave the same, and levy assessments therefor against the property of plaintiffs, wherefore plaintiffs prayed an injunction. The allegations of the complaint with reference to the objections to the paving and the adoption of the resolution therefor are as follows:

"6. That on the 17th day of September, 1923, the time for considering the adoption of said resolution having been postponed by said City Commission from the 10th day of September to the 17th day of September, 1923, said City Commission adopted said proposed resolution.

"7. That prior to the time of the adoption of said resolution written protests had been filed with the auditor of said city, signed by the owners of more than 65 per cent of the frontage of property liable to assessment for paving and otherwise improving said Eighth street between Broadway and Summit streets in said city, and said written protests were at the time of the adoption of said resolution before, and were considered by, said City Commission, and said protests, excluding those who had withdrawn from the same, at the time of the adoption of said resolution contained the authorized signatures of the owners of more than 65 per cent of all property liable to assessment for said paving and other improvements abutting upon said Eighth street between Broadway and Summit streets.

"8. That notwithstanding said facts the defendants A. L. Wyman, Jennie C. Murphy, W. N. Rapalee, E. A. Royem and William

F. Jencks, acting as the City Commission of said city of Yankton, erroneously reached the conclusion that said written protests at the time of the adoption of said resolution did not contain authorized signatures of more than 65 per cent of the owners of property liable to assessment for said improvements, and by reason of said erroneous conclusion adopted said proposed resolution."

The answer of the defendants admitted the formal allegations of the complaint, but contained a denial in the following language:

"The defendants deny all the allegations of paragraphs seven and eight of the plaintiff's complaint and allege the facts to be that less than sixty-five per cent of the frontage of property liable to assessment for paving and otherwise improving said Eighth street between Broadway and Summit streets in the city of Yankton, South Dakota, was represented upon written protests at the time of the adoption of said resolution mentioned and described in the plaintiff's complaint and the defendants allege that certain of said signers were without authority to sign said protests and that said alleged protests were wholly insufficient to deprive the City Commission of Yankton of its authority and jurisdiction to adopt said resolution declaring a necessity for paving and other improvements upon said street."

The case was tried upon stipulated facts, which facts were subsequently adopted as findings by the learned trial judge and upon which findings he based conclusions of law in favor of the defendants, and thereupon made and entered his judgment dismissing the action upon its merits. The sixth conclusion of law of the learned trial judge was as follows:

"That the defendants are entitled to a judgment of dismissal of said action upon its merits and a dissolution of the order of injunction therein and a recovery of costs and disbursements."

From the pleadings, the stipulated facts, and the record before us, it is entirely apparent that the abstract propositions which appellants presented to the trial court and which they seek to have reviewed in this court go to the sufficiency of the protests filed and are specifically and principally these:

First, that a protest signed by an individual in her own name and as administratrix is not withdrawn by a withdrawal signed by the same individual as administratrix.

Second, that a minor of the age of 13 years, who is the grantee in the latest recorded deed of conveyance of real estate abutting upon a street in a municipality, is competent and capable in her own name to sign a written protest against the paving of said street, under the provisions of section 6358, Code 1919.

A majority of the judges entertain the view that these propositions were not properly before the trial court upon the pleadings and stipulated facts, and doubt that they are now properly before this court for decision. The statute involved is section 6364, Revised Code 1919, as amended by chapter 240, Laws 1923, reading as follows:

Section 6364. *Proposed Resolution — Notice — Adoption.* Whenever the governing body of any municipal corporation shall deem it necessary to open, widen, extend, grade, pave, macadamize, gravel, bridge, construct a viaduct upon or over, to erect equipment for street lighting in, curb, gutter, drain or otherwise improve, any streets, avenues, alleys or public ways for which a special assessment is to be levied, it shall, in a proposed resolution declare the necessity of such improvement or improvements stating therein the streets, avenues, alleys, public ways or grounds to be improved, the nature of the proposed improvement or improvements, the material to be used or materials from which a choice may be made, an estimate of the total cost or cost per front foot, a description of the lots or tracts proposed to be assessed, and the time and place at which it will meet to consider the adoption of such resolution, which resolution shall be published in the official newspaper of the municipality once a week for three consecutive weeks prior to the time specified in said resolution for the consideration of the adoption of the same: Provided, that if such improvement be petitioned for by the owners of all the property to be assessed therefor, such improvement may be provided for by resolution, without publication; provided, further, that twenty days' notice by personal service of such proposed resolution upon the record owners of such lots or tracts, who were such at the time the resolution was proposed, shall be equivalent to such publication.

"The improvement or improvements of more than one street, avenue, alley or public way may be embraced in one proposed resolution, provided only that said improvement or improvements shall be substantially uniform as to all streets, avenues, alleys and public

ways embraced in said resolution; but minor variations in amount of grading or excavating required in or upon various portions of said improvement or improvements, or other minor variations in the actual amount of labor required in the erection or construction of various portions of said proposed improvement or improvements shall not be held or taken as any departure from the uniformity above required.

"*At the time of such meeting or at any adjournment thereof, the governing body shall consider the objections, if any, to such proposed resolution and may adopt such resolution, with or without amendment, as it may deem proper;* but no amendment shall be made affecting any property not included in the original resolution until the owner thereof shall have been given the notice and opportunity to be heard hereinbefore provided. *After twenty days from the adoption of such resolution, unless the referendum be invoked or unless a written protest shall have been filed with the city auditor* or town clerk, signed by the owners of more than sixty-five per cent of the frontage of property liable to assessment, the governing body shall have power to cause such improvement to be made, to contract therefor and to levy and collect special assessments therefor, as provided in article 6 of this chapter."

From the pleadings and stipulated facts in the case at bar it appears that governing body of the city of Yankton prior to September 1, 1923, by a proposed resolution declared the necessity for paving Eighth street and gave due notice by publication, as required by the statute, of the time and place when the governing body of the city would meet to consider the adoption of such resolution, which time and place after an adjournment was ultimately fixed for September 17, 1923. It further appears that what are denominated in the pleadings and record in this case as "written protests" were filed prior to the time of the adoption of the proposed resolution on September 17th. There is no allegation anywhere in the pleadings that any written protests was filed with the city auditor after the adoption of the resolution.

A majority of the judges think that the statute above quoted makes a marked and vital distinction between objections to the adoption of the resolution and written protests filed within 20 days after the adoption thereof, and that any objections made at or before the adoption of the proposed resolution, whether made orally

or whether written and filed, address themselves entirely to the discretion of the governing body. The statute distinctly says that the board at the time fixed for adopting the proposed resolution shall consider the objections, if any, and may adopt such resolution. The power of the board to adopt the resolution is not qualified by the statute in any manner whatever, either expressly or by any fair implication. This is not apt language to convey the idea that the board shall consider the objections and may adopt such resolution unless owners of more than 65 per cent of the frontage of the property to be affected are objecting. And it can scarcely be logically maintained that the Legislature meant to grant the board (as this statute does) the absolute power to adopt the resolution, regardless of the amount of previous objection, and at the same time intended that such adoption should be utterly futile and ineffective for any purpose if there had been a certain kind and amount of previous objection.

A majority of the judges believe, therefore, that objection at that stage of the proceedings is addressed exclusively to the judgment and discretion of the governing body, and does not in anywise affect its legal power, jurisdiction or authority to adopt the resolution, and think that the "written protest" specified in the statute as sufficient to destroy the effectiveness of the resolution as adopted, and to bar the power of the governing body to cause the improvement in question to be made, can no more be filed before the resolution is actually adopted than the referendum could be invoked upon the resolution before it was adopted. Until the actual adoption of the resolution the whole matter is entirely tentative. No one knows just what will be the form of resolution that the board will actually adopt. The resolution in its preliminary stage is denominated by the statute as a "proposed resolution." At the time set for the adoption thereof the statute provides that such proposed resolution may be adopted (and thereby become for the first time a resolution as distinguished from a proposed resolution) with or without amendment, subject only to the restriction that no amendment shall be made at that time which will affect any property not included in the property advertised to be affected by the resolution in its proposed form, without giving the owner thereof notice and opportunity to be heard.

If this view of the law be correct, it is doubtless decisive of

the case at bar; but inasmuch as this particular question was not urged by counsel, either in this court or in the court below, and is not argued in the briefs, we deem it inadvisable to turn the case thereon, and have given our attention, regardless of any question as to time of filing, to the sufficiency of signatures presented in the court below and argued by counsel here.

■ It appears that, by decree of distribution in the estate of one Harris, 66 feet abutting upon the proposed paving project was distributed, one-third to Mary Harris and two-fifteenths each to five other persons named in said decree, the decree of distribution being filed before the entry of protests, but said real estate having never been deeded or partitioned among the persons so decreed to be owners. The protests in question carried the following signatures, "Mary Harris 66 feet" and "Mary Harris, Adm'x." Thereafter and prior to the adoption of the resolution the said Mary Harris signed and filed with the city auditor an instrument as follows:

"To the City Auditor and Board of City Commissioners of Yankton, South Dakota:

"I hereby withdraw my name from the remonstrance filed in the office of the city auditor against the pavement of Eighth or Main street in the city of Yankton, and I direct the City Commission not to count my name or my property as remonstrating against said pavement when the resolution for the same comes up for final action.

"Respectfully submitted,

"Mary Harris, Adm'x."

Appellant contends that this was a withdrawal only as to "Mary Harris, Adm'x," and did not withdraw the signature "Mary Harris 66 feet," but left as a protestor Mary Harris, tenant in common owning one-third of said 66 feet, and that her protest as such tenant in common was a valid protest in behalf of the entire 66 feet. The learned trial judge held that the withdrawal, under the circumstances of this case, was a complete withdrawal of the protest of Mary Harris, whether made by her as an individual tenant in common or as administratrix. In view of the fact that the decree of distribution had long since been entered, and in view of the language of the withdrawal, we are of the opinion that the learned trial judge was correct in so holding, and it therefore be-

comes unnecessary to consider the question argued by appellant as to the right of a tenant in common, owning a fractional interest, to protest in behalf of the entire frontage.

█ One of the protests filed prior to September 17, 1923, carried the signature "Nadine J. Calleson 50 feet." It was stipulated that Nadine J. Calleson was a child 13 years of age, and was the grantee named in a warranty deed dated January 16, 1923, conveying to her a tract of land abutting and fronting 50 feet on the proposed paving project. The learned trial judge ruled that this protest and signature was not legal or sufficient as to such 50 feet. On this point the court is divided, three of the judges entertaining the opinion that the learned trial judge ruled the matter correctly, two thinking otherwise. To set forth in detail the diverging opinions and the reasons therefor would, we think, serve no good purpose.

Without the inclusion of the Harris tract and the Calleson tract, the protests admittedly embrace less than 65 per cent of the property fronting on the proposed improvement and are admittedly insufficient to bar the power of the governing body to cause the improvement to be made. We are therefore of the opinion that the record presents no prejudicial error, and the judgment appealed from is affirmed.

BURCH, P. J., and SHERWOOD, J., concur.